# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| IRON WORKERS MID-SOUTH PENSION FUND, *derivatively on Behalf of U.S. Bancorp*, | Civil No. 13-289 (JRT/JJG) |
| Plaintiff, | |
| v. | |
| RICHARD K. DAVIS, ANDREW CECERE, PATRICK T. STOKES, O'DELL M. OWENS, JERRY W. LEVIN, VICTORIA BUYNISKI GLUCKMAN, DAVID B. O'MALEY, ARTHUR D. COLLINS, JR., JOEL W. JOHNSON, CRAIG D. SCHNUCK, OLIVIA F. KIRTLEY, DOUGLAS M. BAKER, JR., Y. MARC BELTON, and RICHARD D. REITEN, | **MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS** |
| Defendants, | |
| and | |
| U.S. BANCORP, *a Delaware Corporation*, | |
| Nominal Defendant. | |

---

Julia M. Williams, **ROBBINS ARROYO LLP**, 600 B Street, Suite 1900, San Diego, CA   92101; and Henry Helgen, **ANDERSON, HELGEN, DAVIS & NISSEN, LLC**, 333 South Seventh Street, Suite 310, Minneapolis, MN  55402, for plaintiff.

Peter W. Carter and Hugh D. Brown, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for defendants.

Steve W. Gaskins, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN  55402, for nominal defendant.

This is a shareholder derivative action brought by Iron Workers Mid-South Pension Fund ("Iron") on behalf of nominal defendant U.S. Bancorp ("US Bank") against several of US Bank's current and former officers and directors.[1]  US Bank's largest subsidiary, U.S. Bank National Association ("US Bank NA"), served as trustee of several trusts that invested in mortgage-backed securities.  US Bank NA allegedly breached various contractual and statutory duties as trustee and now faces at least two class actions brought by investors in the trusts.  The present action arises as a result of those class actions.  Iron alleges that US Bank's officers and directors failed to oversee US Bank NA's performance as trustee, and as a result of the lack of internal controls, US Bank faces substantial losses and has suffered reputational harm.  Iron also brings claims for waste and unjust enrichment premised on the fact that Defendants received compensation from US Bank while they were allegedly breaching their fiduciary duties.

Defendants move to dismiss Iron's breach of fiduciary duty claim on the grounds that (1) Iron did not make a proper demand on the Board and therefore lacks standing to pursue this derivative action; (2) Iron fails to plausibly allege that Defendants consciously or knowingly disregarded their oversight duties; and (3) Iron's alleged damages are overly speculative.  Although the Court finds that reasonable doubt exists as to the good faith and due care exhibited by the Board in response to Iron's demand, the Court will

---

[1] The Court will refer to the individual defendants as "Defendants."

nevertheless grant Defendants' motion to dismiss Iron's breach of fiduciary duty claim because none of Iron's allegations support the reasonable inference that Defendants consciously or knowingly failed in their oversight duties.  Therefore, Iron fails to state a plausible claim that Defendants are liable for a failure of oversight.  The Court will also grant Defendants' motion to dismiss Iron's waste and unjust enrichment claims because Iron has not plausibly alleged that Defendants' salaries served no corporate purpose or were paid without any justification.

## BACKGROUND

### I.    THE PARTIES

Iron is a pension fund that currently holds US Bank stock and held US Bank stock at the time of the wrongdoing alleged in the complaint.  (Compl. ¶ 18, Feb. 5, 2013, Docket No. 1.)  US Bank, the nominal defendant, is a Delaware corporation with its principal place of business in Minnesota.  (*Id.* ¶¶ 17, 19.)  The named Defendants are members of US Bank's Board of Directors ("the Board") and US Bank's CEO and CFO.[2]

---

[2] The complaint names the following fourteen defendants: Richard K. Davis – Chairman of the Board since December 2007 and CEO since December 2006; Andrew Cecere – US Bank's CFO since February 2007; Patrick T. Stokes – Member of the Board since 1992; O'Dell M. Owens – Member of the Board since 1991. Jerry W. Levin – Member of the Board since 1995; Victoria Buyniski Gluckman – Member of the Board since 1990; David B. O'Maley – Member of the Board since 1995; Arthur D. Collins, Jr. – Member of the Board since 1996; Joel W. Johnson – Member of the Board since 1999; Craig D. Schnuck – Member of the Board since 2002; Olivia F. Kirtley – Member of the Board since 2006; Douglas M. Baker, Jr. – Member of the Board since January 2008; Y. Marc Belton – Member of the Board since March 2009; Richard G. Reiten – Member of the Board from 1998 to April 2012.  (*See* Compl. ¶¶ 20-33.)

A number of the Defendants currently serve, or have served, on US Bank's Audit Committee and/or Risk Management Committee.  (*Id.*)

## II.    THE COVERED TRUSTS

US Bank NA, a subsidiary of US Bank, served as trustee for a group of trusts holding residential mortgages as part of mortgage-backed securities transactions ("the Trusts").  (Compl. ¶¶ 1-2.)  As trustee, US Bank NA owed a variety of obligations to the holders of the Trust's property.  (*Id.* ¶ 2.)  These obligations arose contractually, from the documents governing the Trust, and statutorily, from the Federal Trust Indenture Act of 1939, 15 U.S.C. §§ 77aaa, *et seq.*  The complaint goes into great depth describing the creation of the Trusts and the duties of US Bank NA as trustee.

The mortgages that composed the Trust property were primarily originated by either Bear, Stearns & Co. ("Bear Stearns") or Washington Mutual Bank ("WaMu"). (Compl. ¶¶ 54-55.)  Bear Stearns would group mortgages it had originated into a large pool and transfer them to a shell entity (referred to as a Depositor), owned or controlled by Bear Stearns.  (*Id.* ¶ 56.)  This transfer would be accompanied by a Mortgage Loan Purchase Agreement that included representations and warranties concerning the quality of the mortgages in the pool, and promises from the seller to cure, substitute, or repurchase mortgages that were below the promised standards.  (*Id.*)  The agreement also indicated that US Bank NA, as trustee, would have the right to enforce the representations and promises.  (*Id.*)  The Depositor would transfer the pool of mortgages

to US Bank NA for the benefit of the Covered Trusts.  (*Id.* ¶ 57.)   Finally, the mortgage-backed securities would be marketed and sold to investors.  (*Id.* ¶ 58.)[3]

Iron highlights several duties that US Bank NA allegedly breached in its role as trustee.  First, US Bank NA was required to take physical possession of the underlying mortgage documents.  (*Id.* ¶¶ 66, 74.)  Second, US Bank NA was required to review the mortgage documents and certify that all required documents had been properly executed. (*Id.* ¶¶ 68, 78.)   Third, US Bank NA was required to promptly notify the seller (Bear Stearns or WaMu) if it detected any material breaches of the representations and warranties.  (*Id.* ¶¶ 71, 81.)   Such notice would then trigger the seller's duty to cure, substitute or repurchase.  (*Id.* ¶¶ 73, 81.)  These duties arose by contract.  US Bank NA also had statutory duties to ensure that the mortgages complied with the terms of the governing agreements, to perform the duties required of it under the governing agreements, and to give notice to the investors of any known defaults.  (*Id.* ¶¶ 84-87.)

US Bank NA received fees for serving as trustee.  (Carter Decl., Ex. 4 at 118-19.) US Bank reports that 5% of its revenue comes from "trust and investment management fees," and the fees US Bank NA received for serving as trustee of the Trusts are likely a fraction of that 5%.  (Carter Decl., Ex. 5 at 21, 25.)

## III.   IRON'S ALLEGATIONS

As a result of its alleged failures as Trustee, US Bank NA is now the subject of two class actions in the Southern District of New York brought by investors.  (Compl.

---

[3] The process for WaMu was substantially similar.  (Compl. ¶ 58 n.3.)

¶ 7.)   In one of these actions, the court recently denied a motion to dismiss.  *See Policemen's Annuity & Benefit Fund v. Bank of Am., NA*, __ F. Supp. 2d __, 2013 WL 1877618 (S.D.N.Y. May 6, 2013).  The expense, potential damages, and potential loss of goodwill caused by these class actions motivated the present derivative action against US Bank's officers and directors.  (Compl. ¶¶ 112-13.)

Iron alleges that Defendants breached their fiduciary duties of loyalty and good faith by failing to prevent US Bank NA from violating its various duties as trustee.  (*Id.* ¶ 45.)  Iron points to various "red flags" that purportedly demonstrate that US Bank's officers and directors knew that there were defects in the mortgages and knew that US Bank NA was failing to comply with its duties as trustee.

First, Iron notes that after Bear Stearns' 2008 collapse, numerous investigations and news reports discovered that Bear Stearns regularly breached its warranties and representations in similar transactions.  (*Id.* ¶ 90.)  Bear Stearns' breaches have been the subject of many lawsuits.  (*Id.* ¶¶ 90-91.)  Iron points to similar warning signs relating to mortgages originated by WaMu.  (*Id.* ¶¶ 93-96.)  Mortgages originated by WaMu became delinquent at increasing rates in the summer of 2008 and ratings agencies lowered the ratings on some of the Trust's property.  (*Id.* ¶ 94.)  Like Bear Stearns, WaMu faced several lawsuits relating to its mortgage-backed securities.  (*Id.* ¶ 95.)  A Senate report found that WaMu's mortgage-backed securities were "among the worst performing in the marketplace."  (*Id.* ¶ 96.)  Iron alleges that despite the clear warnings that Bear Stearns and WaMu had breached the warranties and representations, Defendants did nothing to

ensure that US Bank NA, as trustee, acted to enforce the obligation to cure, substitute, or repurchase the defective loans.  (*Id.* ¶¶ 92, 97.)

Second, Iron points to several state and federal reports on abuses by banks in foreclosure proceedings.  These reports all found that banks commonly did not possess the required documents to foreclose or there were irregularities in the documentation that inhibited banks' ability to foreclose.  (*See id.* ¶¶ 98-101.)  One federal report was based on a review of mortgage documents at fourteen servicers, including US Bank, and expressed concerns about the prevalence of irregularities in the documentation.  (*Id.* ¶ 101.)

Iron alleges that in light of the numerous federal and state reports, as well as the news coverage and litigation, Defendants therefore "knew or were recklessly unaware" of the deficiencies in the mortgages originated by Bear Stearns and WaMu.  (*Id.* ¶ 103.) Iron then alleges that Defendants failed to ensure that US Bank NA performed its duties as trustee and failed to establish any system of oversight.  (*Id.* ¶ 110.)

## IV.    IRON'S DEMAND AND THE BOARD'S RESPONSE

On February 29, 2012, three months after the first class action against US Bank NA was filed, Iron sent a letter to the US Bank board alleging that officers and directors had engaged in misconduct in relation to the company's duties as trustee for the relevant mortgage-backed securities trusts.  (Compl. ¶ 118 & Ex. A.)  Iron identified itself and indicated that it was a shareholder.  (Compl., Ex. A at 1.)  The letter described in detail the alleged failings of US Bank NA as trustee, and demanded that US Bank investigate to

determine which employees, officers, or directors were responsible for overseeing US Bank's internal controls relating to its role as trustee and who may be responsible for US Bank NA's failings as trustee. (*Id.* at 1-3.) Iron then requested that US Bank "commence litigation proceedings against each party identified as being responsible for the mismanagement and other related misconduct" described in the letter. (*Id.* at 4.)

US Bank responded on April 9, 2012, requesting verification of the number of shares Iron held, the time period of its stock ownership, and more information about who committed misconduct and what the misconduct was. (*Id.* ¶ 119 & Ex. B.) On May 2, 2012, Iron responded that it had provided all the information it was required to provide, (*id.* ¶ 120 & Ex. C), and on June 12, 2012, Iron sent another letter setting a deadline of June 22, 2012, by which it expected the Board to respond, (*id.* ¶ 121 & Ex. D.) US Bank's next letter, sent on June 15, 2012, informed Iron that US Bank would take action within ninety days if Iron provided proof of stock ownership. (*Id.* ¶ 122 & Ex. E.) Iron responded on June 20, 2012, providing a May 2012 statement of activity demonstrating that it held shares at that time. (*Id.* ¶ 123 & Ex. F.) On July 13, 2012, US Bank again requested proof of the duration of Iron's stock ownership and continued to contend that it was premature to investigate potential wrongdoing by the Board on the basis of a class action filed against US Bank NA that the company was vigorously defending. (*Id.* ¶ 124 & Ex. G).

Iron sent a final letter on August 6, 2012, stating its belief that the Board was refusing to investigate and that Iron did not need to provide proof of the duration of its

stock ownership in order to trigger a reasonable investigation.  (*Id.* ¶ 125 & Ex. H.)  Iron then filed the present complaint on February 5, 2013.

## ANALYSIS

## I.   STANDARD OF REVIEW

There are multiple standards of review at play in the present motion to dismiss. Federal Rule of Civil Procedure 23.1 provides pleading requirements for derivative complaints brought by shareholders.   Rule 23.1 requires the plaintiff to state with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).   If a plaintiff clears that hurdle, the substantive allegations are reviewed under the more lenient standards of Rule 8 and Rule 12(b)(6).  *Rich v. Yu Kwai Chong*, 66 A.3d 963, 979 (Del. Ch. 2013).[4]

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[4]  The parties agree that Delaware substantive law applies because US Bank is incorporated in Delaware.  *See Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) ("[F]ederal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law . . . ." (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991)).

*Twombly*, 550 U.S. 544, 555 (2007)).   That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).   At the motion to dismiss stage, the record for review before the Court is generally limited to the complaint, some matters that are part of the public record, and any documents attached as exhibits that are necessarily embraced by the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.   IRON'S DEMAND AND THE BOARD'S RESPONSE

The first issue is whether Iron has established that it is entitled to bring this action derivatively on behalf of US Bank.  Iron does not allege that demand would have been futile[5]; rather, Iron alleges that it made a demand that was refused by the Board.  Rule 23.1 requires a plaintiff in a derivative action to "state with particularity . . . (A) any effort by the plaintiff to obtain the desired action from the directors . . . and . . . (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(3).

---

[5] By sending the demand letter, Iron "tacitly acknowledge[d] the absence of facts to support a finding of futility," and therefore can no longer argue that demand would have been futile. *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990).

Defendants contend that Iron's demand was inadequate because it did not describe the suspected wrongdoing in sufficient detail and because Iron did not provide verification (beyond an assertion) that it held US Bank stock at the time of the alleged wrongdoing.

The Delaware Supreme Court has held that the business judgment rule applies to a board's action following receipt of a demand and "when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990). "[T]he methods and manner in which the board has chosen to act on the demand represent judgments entitled to the benefit of the business judgment rule if taken in a manner that was informed and in good faith." *Rich*, 66 A.3d at 977. "Where the board has taken no action and has simply failed to address the demand, the stockholder satisfies Rule 23.1 and may proceed derivatively if he demonstrates that the failure to act is wrongful . . . ." *Id.* at 976. If Iron's complaint "raise[s] a reasonable doubt that the directors are acting in good faith or with due care," Iron may proceed derivatively. *Id.* at 977.

The Court must first analyze the content of the demand letter to determine what response, if any, it warranted from the Board. Under Delaware law,

> [a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages.

*Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). Additionally, a shareholder making a demand on a board of directors "must allow the board to ascertain through the exercise of due diligence whether the demand . . . is coming from a

shareholder . . . ."  *Shenk v. Karmazin*, 867 F. Supp. 2d 379, 382 (S.D.N.Y. 2011)
(internal quotation marks omitted).   The shareholder making the demand must
"reasonably demonstrate" that it is a current shareholder and that it held shares at the time
of the alleged wrongdoing.  *See id.*; *see also* Fed. R. Civ. P. 23.1(b)(1).  A board of
directors "need not act upon a purported shareholder's demand letter if, **after reasonable
investigation undertaken in good faith**, the shareholder's status as a shareholder cannot
be confirmed." *Richelson v. Yost*, 738 F. Supp. 2d 589, 599 (E.D. Pa. 2010) (emphasis
added).

　　　The Court first finds that the demand letter gave the Board sufficient notice of the
nature of Iron's concerns.  Iron's letter essentially restated the allegations that formed the
basis of the class action against US Bank NA, and US Bank contends that the mere
existence of litigation against the company does not establish that officers and directors
breached their fiduciary duties.  *See Shenk*, 867 F. Supp. 2d at 382 ("[R]eference to the
antitrust class action, without more, does not sufficiently identify the factual basis of the
wrongful acts over which [the shareholder] requested suit." (internal quotation marks
omitted)).  Yet the shareholder is not required to identify the legal theory under which a
director or officer may be liable, and "[d]ecisions as to how and on what theory the
corporation will pursue wrongdoers are the proper province of the Board of Directors."
*Allison*, 604 F. Supp. at 1117.  Iron's letter referenced internal controls and oversight, and
requested that the Board commence an investigation to determine which officers and
directors were responsible for those functions and whether they failed to meet their
duties.  While unspecific with respect to what the directors or officers personally did

wrong, Iron's allegations were sufficient to give the Board notice as to the nature of Iron's concerns. *See Yaw v. Talley*, Civ. A. No. 12882, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994) (noting that one purpose of the demand requirement is to "put the board on notice of possible wrongdoing and enable it to take corrective intracorporate action").

The Court also finds that by identifying itself, presenting evidence of its current shareholder status, and asserting that it had standing to make the demand, Iron reasonably demonstrated that it had standing. Crucially, there is no evidence that Defendants made any effort to ascertain Iron's shareholder status, and even if they made such an effort, the Board did not inform Iron that it was requesting proof of standing because it had been unable to independently ascertain Iron's shareholder status.[6] The weight of caselaw suggests that a board of directors must make some effort to determine the shareholder status of the demanding party before the board will be justified in refusing a demand on the basis that the plaintiff failed to verify its shareholder status for the Board.[7]

---

[6] Defendants indicated at oral argument that the Board had reviewed US Bank's records and was unable to confirm Iron's shareholder status; however, the Board made no reference to this in its letters to Iron. Defendants' assertion at oral argument therefore is outside of the record that the Court may properly consider at this stage.

[7] *See, e.g.*, *Richelson*, 738 F. Supp. 2d at 600 ("[A]lthough the demand letter in this case identified the plaintiff by name and stated that he was a shareholder, it was reasonable for the corporation to request that Plaintiff confirm he was a shareholder before proceeding further **after AmerisourceBergen could not confirm the same after checking the corporation's books and records**." (emphasis added)); *Wang v. Page*, No. C 12-1785, 2012 WL 3278717, at *2 (N.D. Cal. Aug. 10, 2012) ("Because plaintiff offered no information as to her stock holdings, **and because plaintiff's name does not appear on Google's shareholder lists**, Google had no way of knowing whether the demand letter was sent from an actual shareholder." (emphasis added)).

- 13 -

Iron provided proof that it was a current shareholder and asserted that it had held shares throughout the relevant time period.  Iron also gave sufficient notice of the nature of its concerns.  For the Board to continually insist that Iron provide additional proof without informing Iron that the Board had made unsuccessful efforts to ascertain Iron's standing raises a reasonable doubt as to whether the Board was acting in good faith and with due care in response to Iron's demand.  *See Rich*, 66 A.3d at 977.[8]   Therefore, the Court concludes that Iron has established that demand was refused and may proceed derivatively.

## III.   IRON'S SUBSTANTIVE ALLEGATIONS

### A.    Breach of Fiduciary Duty

Although the complaint refers variously to Defendants' fiduciary duties of "good faith," "fair dealing," "due care," "candor," and "loyalty," (Compl. ¶¶ 133-34), the heart of Iron's breach of fiduciary duty claim is clearly a failure of oversight claim, (Compl. ¶¶ 134-35; Mem. in Opp. at 25-29, May 14, 2013, Docket No. 23), which is founded on the requirement that directors act in good faith, *see Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006).  The fiduciary duty that is actually implicated by a failure of oversight claim is the duty of loyalty.  *See id.* at 370.  Because failure of oversight claims allege bad faith, knowing misconduct, and a breach of the duty of loyalty, the exculpatory provision in US

---

[8] *Shenk*, a case on which Defendants rely, is distinguishable.  In that case, the contents of the demand letter suggested that the purported shareholder did **not** own stock at the relevant time period.  *See Shenk*, 867 F. Supp. 2d at 382-83 ("[Plaintiff]'s letter . . . failed to show that he owned stock at the time of the events of which he complained.").

Bank's Certificate of Incorporation would not protect Defendants if the claim is adequately alleged.[9]   Nonetheless, the Court finds that Iron's claims fail even under the lenient standards of Rules 8 and 12(b)(6).   *See Iqbal*, 556 U.S. at 678 (holding that a claim must be plausible, not merely possible).

The Delaware Supreme Court has provided the following conditions that may amount to a failure of oversight claim:

> (a) [T]he directors utterly failed to implement any reporting or information system or controls; **or** (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

*Stone*, 911 A.2d at 370 (emphasis in original); *see also In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).   Delaware courts consistently recognize that "director liability based on the duty of oversight 'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'"  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009) (quoting *Caremark*, 698 A.2d at 967).   "A plaintiff must allege that the directors knew that they were violating their fiduciary obligations, intended to cause harm or that they acted with a conscious disregard for their responsibilities."  *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058,

---

[9] US Bank's Certificate of Incorporation contains a standard exculpatory provision, which provides that "[n]o director of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty by such director" except as to "acts or omissions not in good faith or which involve intentional misconduct or knowing violation of law."  (Carter Decl., Ex. 2 at 4.)

2013 WL 1777766, at *13 (S.D.N.Y. Apr. 25, 2013).   "Conclusory allegations that defendants failed to act on 'warning signs' in the broader economy do not suffice to state a claim." *Id.*

Iron's primary theory is that various red flags allow the inference that Defendants consciously disregarded their duty of oversight.[10]   As described above, Iron focuses on media reports, state and federal investigations, and litigation, all of which indicated that there were serious problems with the mortgages originated by WaMu and Bear Stearns. However, it is crucial to distinguish between (1) knowledge that there were problems with the mortgages that were held in the Trusts, and (2) knowledge that US Bank NA was failing as trustee and that US Bank lacked internal controls to protect against such failings.   For Iron's theory to succeed, the red flags must "support an inference that [the company's] directors knew that there were material weaknesses in [the company]'s internal controls," not simply that directors knew that mortgage-backed securities were receiving intense scrutiny.   *Rich*, 66 A.2d at 983; *see also Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008) ("[R]ed flags are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer." (internal quotation marks omitted)).

Iron relies heavily on the Southern District of New York's recent denial of a motion to dismiss in one of the two class actions against US Bank NA.   In that case, the court found that the plaintiffs (investors in the mortgage-backed securities Trusts)

---

[10] Iron does not suggest that a different theory applies to the officer defendants than the director defendants.   (*See* Mem. in Opp. at 25 n.13; 26 n.15.)

sufficiently alleged that US Bank NA (the trustee) had actual knowledge that WaMu breached the representations and warranties regarding the mortgages.  *See Policemen's Annuity & Benefit Fund*, 2013 WL 1877618, at *12.  However, *Policemen's Annuity & Benefit Fund* is distinguishable because the issue was whether the trustee had knowledge that the representations regarding the mortgages had been breached.  In that case, the various red flags directly suggested that the representations had been breached.  In the present case, the issue is whether US Bank's individual directors and officers had knowledge that US Bank NA, the trustee, was failing in its duties and that US Bank's internal controls were inadequate to guard against the trustee's failings.  *See Rich*, 66 A.2d at 983.  The red flags that were directly on point in *Policemen's Annuity & Benefit Fund* are only tangentially related to the relevant issue in the present case.

The Court finds that Iron's allegations are insufficient to plausibly state a claim that Defendants consciously disregarded their oversight duties.  Although the red flags highlighted in the complaint reflect the growing awareness of issues surrounding mortgage-backed securities, Iron has failed to present "facts suggesting that the Board was presented with red flags alerting it to potential misconduct at the Company."  *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009).  Particularized facts are not required in the present case because the Court is applying Rule 12(b)(6), but Iron still must make plausible allegations.  The fact that Defendants may have known that problems were being discovered with mortgage-backed securities does not mean that Defendants knew that US Bank NA was failing to fulfill its duties as trustee or that proper oversight was not in place.  *See id.*

In addition to lacking plausible allegations that Defendants consciously disregarded their oversight duties, Iron's complaint lacks any description of what such oversight would have looked like. *See id.* at 129 ("[N]owhere do plaintiffs adequately explain what the director defendants actually did or failed to do that would constitute . . . a violation [of the duty of oversight].").   For example, Iron asserts that Defendants "creat[ed] a culture of lawlessness within U.S. Bank," "disregard[ed] the illegal activity," "recklessly permitt[ed] the improper activity concerning U.S. Bank's role as trustee," and "fail[ed] to review and approve meaningful policies relating to regulatory compliance and operational risk matters."   (Compl. ¶¶ 134-38.)   These conclusory allegations are insufficient to plausibly allege a failure of oversight that rose to the level of bad faith. *See Bank of Am.*, 2013 WL 1777766, at *13.

A comparison to cases in which failure of oversight claims have been allowed to proceed is particularly instructive.  For example, in *Rich*, a jewelry company's board of directors had issued a press release announcing "the likelihood of material weaknesses in its internal controls," and the company also "received a letter from NASDAQ . . . warning [it] that it would face delisting if [it] did not bring its reporting requirements up to date with the SEC."  66 A.3d  at 984.  On those facts, it would have been implausible to assert that the directors were unaware of the red flags or were unaware of the red flags' significance as to the company's internal controls and oversight.   In the present case, while it is reasonable to infer that Defendants were aware of some of the red flags relating to mortgage-backed securities in general, the allegations in the current complaint

do not demonstrate that it is plausible that Defendants knew that US Bank NA was failing as trustee and that US Bank's internal controls were inadequate.[11]

Finally, to the extent that Iron contends that various Defendants' positions on the Audit Committee or the Risk Management Committee is sufficient to create the inference that they knowingly failed to properly oversee US Bank NA's actions as trustee, "[t]hat assertion is contrary to well-settled Delaware law." *See Wood*, 953 A.2d at 142; *see also Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 135 ("[D]irector liability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system."). For these reasons, the Court will grant Defendants' motion to dismiss Iron's breach of fiduciary duty claim.[12]

## B.    Waste

In addition to breach of fiduciary duty, Iron brings a claim for waste of corporate assets based on Defendants continuing to receive compensation while allegedly engaging

---

[11] The present case is similarly distinguishable from *In re Am. Int'l Grp., Inc.*, 965 A.2d 763 (Del. Ch. 2009) ("*AIG*"), in which the court denied a motion to dismiss failure of oversight claims against two officers. In that case, the complaint provided detailed allegations indicating that the officers were "directly knowledgeable of and involved in much of the wrongdoing." Conversely, the present case involves alleged technical failures by US Bank NA as trustee, where US Bank NA's fees amounted to a fraction of 5% of US Bank's revenue. There are no allegations that Defendants had knowledge of, or were involved with, US Bank NA's role as trustee. The need for additional oversight is far less glaring and the connection between the defendants and the alleged wrongdoing is more attenuated.

[12] Defendants contend that Iron's breach of fiduciary duty claim must be dismissed for the independent reason that Iron's alleged damages are speculative. The Court need not reach this issue as it will dismiss Iron's claim for the reasons discussed above. If Iron chooses to amend its complaint, it may of course wish to attempt to bolster its allegations as to damages as well as its allegations that Defendants breached their fiduciary duties.

in a failure of oversight that was damaging the company.  Under Delaware law, there is a very high bar for establishing a waste claim.  *See Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000).  Iron must plead facts demonstrating that "no person of ordinary sound business judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by the corporation."  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 656 (Del. Ch. 2008).  Waste claims are governed by "a rigorous test designed to smoke out shady, bad faith deals."  *Id.* at 657.

The Court finds that Iron has failed to state a waste claim.  First, the Court found above that Iron has not stated a claim for breach of fiduciary duty, and the waste claim is premised on Defendants having breached a fiduciary duty.   Second, and more importantly, even if Iron had stated a claim for breach of fiduciary duty, the theory that "paying the salaries and standard fees of officers and directors who commit breaches of fiduciary duty constitutes waste . . . is completely unprecedented under Delaware law." *Taylor v. Kissner*, 893 F. Supp. 2d 659, 673 (D. Del. 2012).  Iron's allegations are not nearly sufficient to state a claim that Defendants' salaries served no corporate purpose or that no person of ordinary sound business judgment would have paid Defendants' salaries.

### C.     Unjust Enrichment

Iron's third and final claim is unjust enrichment.   Under Delaware law, the elements of unjust enrichment are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and

(5) the absence of a remedy provided by law." *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).  Similar to Iron's waste claim, the unjust enrichment claim fails because Iron's sole basis for arguing that Defendants' salaries were paid without justification is the alleged breaches of fiduciary duty, which the Court found were not sufficiently pled.  *See Taylor*, 893 F. Supp. 2d at 674 ("[Plaintiff] has not properly alleged any breach of fiduciary duty or any other theory providing a factual basis to conclude that the compensation received by each Defendant was paid without justification.").  Further, even if Iron's failure of oversight claim survived the present motion to dismiss, Iron makes no allegations regarding Defendants' service to US Bank more broadly that might support the conclusion that there was no justification for Defendants' salaries.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   U.S. Bancorp's and Defendants' Motions to Dismiss [Docket Nos. 13 and 15] are **GRANTED**.

2.   Iron's breach of fiduciary duty claim (Count I) is **DISMISSED without prejudice**.

3.   Iron's waste and unjust enrichment claims (Counts II and III) are **DISMISSED with prejudice**.

4.      Iron shall have forty-five (45) days from the date of this Order to file an amended complaint addressing the noted shortcomings in its breach of fiduciary duty claim.

5.       If Iron does not file an amended complaint within the specified time period, its remaining claims will be dismissed with prejudice.

DATED:   December 30, 2013
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge