# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| IRON WORKERS MID-SOUTH PENSION FUND, *Derivatively on Behalf of U.S. Bancorp*, | Civil No. 13-289 (JRT/HB) |
| Plaintiff, | |
| v. | |
| RICHARD K. DAVIS, ANDREW CECERE, PATRICK T. STOKES, O'DELL M. OWENS, JERRY W. LEVIN, VICTORIA BUYNISKI GLUCKMAN, DAVID B. O'MALEY, ARTHUR D. COLLINS, JR., JOEL W. JOHNSON, CRAIG D. SCHNUCK, OLIVIA F. KIRTLEY, DOUGLAS M. BAKER, JR., Y. MARC BELTON, RICHARD D. REITEN, TERRANCE R. DOLAN, RICHARD J. HIDY, DIANE L. THORMODSGARD, BRYAN R. CALDER, and DOES 1-10, | **MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO DISMISS** |
| Defendants, | |
| and | |
| U.S. BANCORP, *a Delaware Corporation*, | |
| Nominal Defendant. | |

Brian J. Robbins, Craig W. Smith, Gina Stassi, **ROBBINS ARROYO LLP**, 600 B Street, Suite 1900, San Diego, CA 92101; Henry M. Helgen, III and Amanda R. Cefalu, **ANDERSON, HELGEN, DAVIS & NISSEN, LLC**, 333 South Seventh Street, Suite 310, Minneapolis, MN 55402, for plaintiff.

Peter W. Carter, Kristina L. Carlson, and Hugh D. Brown, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for the individual defendants.

Kristina L. Carlson, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for defendants Terrance R. Dolan, Richard J. Hidy, Diane L. Thormodsgard, and Bryan R. Calder.

Sarah H. Daggett and Steve W. Gaskins, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN  55402, for nominal defendant U.S. Bancorp.

Plaintiff Iron Workers Mid-South Pension Fund ("Iron") brought this shareholder derivative action against current and former officers and directors of U.S. Bancorp ("US Bank"), alleging that they breached their fiduciary duties by failing to properly oversee US Bank's largest subsidiary, U.S. Bank National Association ("US Bank NA"), in its role as trustee of trusts that invested in mortgage-backed securities.  The Court dismissed without prejudice Iron's initial failure of oversight claim, finding that Iron's allegations did not sufficiently plead that Defendants – the individual officers and directors of US Bank – consciously disregarded their duty of loyalty.  The Court granted Iron forty-five days to amend its complaint to address the shortcomings in its breach of fiduciary duty claim.  Iron timely amended, and this action is now before the Court on Defendants' motions to dismiss the amended complaint.  Accepting as true the facts alleged in the amended complaint, the Court finds that Iron's amended pleading suffers from the same deficiencies as the initial complaint with respect to the director defendants and does not adequately plead at least gross negligence as to the officer defendants.  Therefore, the Court will grant Defendants' motions and dismiss this action with prejudice.

# BACKGROUND[1]

## I.    IRON'S ALLEGATIONS

Iron is a pension fund that holds US Bank stock.  (Am. Compl., Attach. 1 ("Verification"), Feb. 21, 2014, Docket No. 46.)  Iron has held US Bank stock continuously since January 27, 2005, including during the time of the alleged wrongdoing.  (*Id.*; Am. Compl. ¶¶ 8-12.)  Defendants are US Bank's CEO, CFO, and current and former members of US Bank's Board of Directors.  (Am. Compl. ¶¶ 31-48.) Many of the Defendants currently serve, or have previously served, on US Bank's Audit Committee and/or Risk Management Committee.  (*Id.*)

During the relevant time period, US Bank NA was trustee for a number of trusts holding residential mortgages as part of mortgage-backed securities transactions.  (*Id.* ¶¶ 2-3.)  The mortgages, primarily originated by Washington Mutual Bank ("WaMu") or Bear Stearns & Co. ("Bear Stearns"), were grouped into pools and sold to affiliated shell entities ("Depositors").  (*Id.* ¶ 3.)  The Depositors transferred the mortgage pools to US Bank NA to hold as trustee, and US Bank NA would, in turn, transfer mortgage-backed securities ("MBS") to the Depositors, who ultimately sold the MBS to investors. (*Id.*)  Iron alleges that US Bank NA owed and breached numerous duties to the trusts, including a duty to review the mortgage loan files to ensure there were no defects, and to promptly notify WaMu and Bear Stearns if any defects were identified.  (*Id.* ¶¶ 5-7, 13.)

---

[1] A more thorough description of the underlying facts can be found in the Court's previous Order.  *See Iron Workers Mid-S. Pension Fund v. Davis*, Civ. No. 13-289, 2013 WL 6858567, at *1-*4 (D. Minn. Dec. 30, 2013).

Two class actions are now pending against US Bank NA for multiple alleged breaches of its duties as trustee.  (*Id.* ¶ 14.)

Iron's amended complaint also alleges that the individual directors and officers breached their fiduciary duties of loyalty and good faith by failing to prevent US Bank NA from violating its duties as trustee.  (*Id.* ¶¶ 8-12, 15-17, 51-52, 60-63.)  Iron alleges that various "red flags" alerted Defendants to the serious risks posed by the mortgages underlying Bear Stearns' and WaMu's MBS and that Defendants ignored these red flags.  (*Id.* ¶¶ 9, 11, 106-114.)  These "red flags" include public and private investigations into WaMu's violations of legal requirements governing the origination and transfer of mortgage loans, and investigations into Bear Stearns's breaches of representation and warranties regarding the mortgages conveyed to the MBS covered trusts.   (*Id.* ¶¶ 107-110.)   Iron further alleges that public disclosures following the investigations into both companies, media reports and congressional hearings covering the investigations, and lawsuits against WaMu and Bear Stearns following their collapse, were all red flags indicating to directors and officers at US Bank that there were problems with the MBS, and Defendants ignored these red flags.  (*Id.* ¶¶ 9, 11, 106-114.)

Iron's amended complaint is substantially longer than its original complaint.  One significant amendment is that Iron added several officer defendants: Andrew Cecere, Terrance Dolan, Richard J. Hidy, Bryan Calder, and Diane Thormodsgard, along with ten unnamed "Doe Defendants."   (*Id.* ¶¶ 32-35, 47, 50.)   Accordingly, the amended complaint distinguishes between officers' and directors' obligations to the corporation.  (*Id.* ¶¶ 191-210 (separating allegations against officers into one count and allegations

against directors into two others).)  The amended complaint delves into great detail about the way US Bank NA and US Bank were structured to create direct supervisory responsibility for the covered trusts by the officer defendants.  (*Id.* ¶¶ 132-39.)  Further, the amended complaint describes the roles the officer defendants played at the company and their activities, such as monthly committee meetings, through which they would have been aware of the red flags and the oversight mechanisms in place to address risks affecting the company or the covered trusts.  (*Id.* ¶¶ 140-53.)

Iron also seeks to bolster the red flags it identified in the original complaint.  For example, in the original complaint, Iron stated that "[b]y June and July 2008, monthly reports published by trustees for WaMu MBS securitizations started to show substantial increases in the WaMu Mortgage Loan delinquencies."  (Compl. ¶ 94, Feb. 5, 2013, Docket No. 1.)  In its amended complaint, Iron expands on this allegation, describing the way the trustees' reports – publicly filed with the SEC on the Form 10-D – flagged delinquency and foreclosure information for past due mortgages.  (Am. Compl. ¶ 111.) Iron also provides more detail as to the class actions brought against US Bank NA mentioned in the original complaint.  (Compl. ¶¶ 7, 110.)  *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012), and *Oklahoma Police Pension and Retirement System v. U.S. Bank NA*, 291 F.R.D. 47, 57-58 (S.D.N.Y. 2013), were both filed in the Southern District of New York, with US Bank NA named as a defendant.  (Am. Compl. ¶¶ 128, 130.)  The amended complaint now devotes several paragraphs to describing the allegations raised

by the plaintiffs in those two class actions and how other courts have handled them.  (*Id.* ¶¶ 124-30.)

Iron also adds new red flags in its amended complaint.  In addition to providing more detail on the Form 10-D reports, the amended complaint alleges that US Bank itself acknowledged MBS risks in its Annual Report on Form 10-K filed with the SEC in February 2008.  (*Id.* ¶ 112.)  US Bank's February 25, 2008 Form 10-K confirmed that "certain securities backed by mortgages experienced both credit and liquidity issues" after turbulence in the sub-prime mortgage market in 2007, but assured that US Bank would "monitor changes in market conditions, including the underlying credit quality and performance of assets collateralizing these structured investments."  (*Id.*)  Iron alleges that the Form 10-K shows that US Bank and the individual defendants "acknowledged widespread credit risk due to the unprecedented mortgage market meltdown."  (*Id.*)  They continued to acknowledge it, Iron claims, in 2011 when US Bank NA filed an action against Countrywide Home Loans ("Countrywide"), the originator of some loans backing MBS of which US Bank NA was trustee.  (*Id.* ¶ 121.)  Specifically, US Bank NA asserted misrepresentations and breach of contract by Countrywide in connection with the sale of its MBS-backing loans, similar to actions US Bank NA filed against Morgan Stanley Mortgage Capital Holdings LLC in 2012 and 2013.  (*Id.* ¶¶ 121-22.)  Iron's original complaint alleged that lawsuits filed **against** US Bank NA put Defendants on notice of weaknesses at the company, but the amended complaint adds these allegations about actions initiated **by** US Bank NA as further support, in addition to the previously

described red flags, that Defendants were aware of problems associated with US Bank NA's performance as trustee.

## II.    PROCEDURAL HISTORY

US Bank and Defendants both moved to dismiss Plaintiff's first complaint in its entirety. (Nominal Def.'s Mot. to Dismiss, Apr. 15, 2013, Docket No. 13; Defs.' Mot. to Dismiss Pl.'s Derivative Compl., Apr. 15, 2013, Docket No. 15.) In a December 30, 2013 Order, the Court granted the motions to dismiss, finding that "none of Iron's allegations support the reasonable inference that Defendants consciously or knowingly failed in their oversight duties." *Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *1. The Court explained that Iron had "failed to present facts suggesting that the Board was presented with red flags alerting it to potential misconduct at the Company," and that the complaint "lacks any description of what such oversight would have looked like." *Id.* at *8 (internal quotation marks omitted). The Court allowed Iron forty-five days "to file an amended complaint addressing the noted shortcomings in its breach of fiduciary duty claim." *Id.* at *10.

Iron timely filed an amended complaint on February 21, 2014. As explained above, the amended complaint adds several officer defendants and includes greater detail about the red flags and the role each director and officer defendant played in the corporation. Both US Bank and Defendants have again moved to dismiss Iron's complaint. (Defs.' Mot. to Dismiss Pl.'s First Am. Derivative Compl., Apr. 25, 2014,

Docket No. 67; Nominal Def.'s Mot. to Dismiss Pl.'s First Am. Derivative Compl.,

Apr. 25, 2014, Docket No. 74.)  This matter is now before the Court on these motions.

## ANALYSIS

## I.    STANDARD OF REVIEW

As the Court explained in ruling on Defendants' first motions to dismiss, a motion

to dismiss in this case implicates multiple standards of review.  First, Federal Rule of

Civil Procedure 23.1 sets out the pleading requirements for shareholder derivative

actions.  Rule 23.1 requires a plaintiff to state with particularity "(A) any effort by the

plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not

obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  If a plaintiff

clears that hurdle, the Court must then review the plaintiff's substantive allegations under

the more lenient standards of Rule 8 and Rule 12(b)(6).  *Rich v. Yu Kwai Chong*, 66 A.3d

963, 979 (Del. Ch. 2013).[2]

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court

considers all facts alleged in the complaint as true, and construes the pleadings in a light

most favorable to the non-moving party.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d

585, 594-95 (8th Cir. 2009).  To survive a motion to dismiss, a complaint must provide

more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)).  That is, to avoid dismissal, a complaint must

---

[2]  Because US Bank is incorporated in Delaware, the Court will apply Delaware
substantive law.  *See King v. Baldino*, 409 Fed. App'x 535, 537 (3d Cir. 2010).

include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).  At the motion to dismiss stage, the record for review before the Court is generally limited to the complaint, some matters that are part of the public record, and any documents attached as exhibits that are necessarily embraced by the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.    BREACH OF FIDUCIARY DUTIES

In its amended complaint, Iron drops its claims for waste and unjust enrichment and alleges liability only for breach of fiduciary duty.[3]  Specifically, Iron alleges that the officer and director Defendants breached the fiduciary duty of loyalty.  (Am. Compl.

---

[3] In its December 30, 2013 Order granting Defendants' first motion to dismiss, the Court found that Iron had derivative standing to pursue its complaint.  *See Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *5-*6.  Defendants now re-argue standing, contending that Iron has not adequately alleged shareholder status "at the time of the transaction[s] complained of."  Fed. R. Civ. P. 23.1(b)(1).  As the Court previously explained, however, "Iron provided proof that it was a current shareholder and asserted that it had held shares throughout the relevant time period."  *Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *6.  Further, Iron has attached to its amended complaint a Verification by Iron Trustee Scott Murphy, dated February 20, 2014, declaring under penalty of perjury that Iron "has held shares of U.S. Bancorp stock continuously from January 27, 2005 and remains a shareholder."  (Verification.)  The Court therefore concludes that under Rule 23.1(b)(1) and Delaware law, Iron has "reasonably demonstrate[d its] shareholder status" and satisfied the pleading requirements to establish standing.  *Shenk v. Karmazin*, 867 F. Supp. 2d 379, 382 (S.D.N.Y. 2011).

¶¶ 191-210.)  Although Iron styles its complaint as alleging breach of the fiduciary duties of "good faith," "fair dealing," "loyalty," "candor," and "due care," the crux of Iron's amended complaint – as with Count I of the original complaint – is a claim for failure of oversight.  (*Id.* ¶¶ 194, 200-02, 208.)  Iron's amended complaint distinguishes between the alleged failures of the officer defendants and those of the director defendants.

## A.     Director Defendants

### 1.     Standard of Review

To state a claim for failure of oversight against corporate directors, a plaintiff may allege that:

> (a) [T]he directors utterly failed to implement any reporting or information system or controls; **or** (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

*Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (emphasis added); *see also In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).  "[L]iability for such a failure to oversee requires a showing that the directors **knew** they were not discharging their fiduciary obligations or that they demonstrated a **conscious** disregard for their duties."  *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009); *see also Stone*, 911 A.2d at 370.  Because of the difficulty of pleading facts that show a substantial likelihood that directors consciously disregarded their fiduciary obligations, a failure of oversight claim "'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'"  *In re Citigroup Inc. S'holder*

*Derivative Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009) (quoting *In re Caremark Int'l*, 698 A.2d at 967).  When pursuing such a claim, the burden on a plaintiff is "extremely high." *Id.*

### 2.   Iron's Addition of Detail to Red Flags Alleged in the Original Complaint

As to the director defendants,[4] Iron's principal theory of liability is that the director defendants exposed the company to millions of dollars in liability by failing to act when they either knew or were grossly negligent in not knowing that (1) the mortgage loans had not been properly transferred to the covered trusts as required under the agreements governing the loans, (2) the mortgage loan files were incomplete, and (3) many of the mortgage loans in the covered trusts were not in compliance with representations and warranties made by Bear Stearns, WaMu, and their affiliates.  (Am. Compl. ¶ 194.)  The director defendants either knew or should have known about these issues, Iron alleges, because several "red flags" alerted them to the risks associated with MBS.  Accordingly, they would have been aware of the need to take action to prevent US Bank NA from failing as trustee of the underlying mortgages.  The red flags include the investigations into WaMu's and Bear Stearns's lending practices, those companies' public disclosures following the investigations, media reports covering the collapse of

---

[4] Iron identifies the "director defendants" as the following: Richard K. Davis, Patrick T. Stokes, O'Dell M. Owens, Jerry W. Levin, Victoria Buyniski Gluckman, David B. O'Maley, Arthur D. Collins, Joel W. Johnson, Craig D. Schnuck, Olivia F. Kirtley, Douglas M. Baker, Jr., Y. Marc Belton, and Richard D. Reiten.  (Am. Compl. ¶¶ 31, 36-46, 48-49, 200.)

WaMu and Bear Stearns, and lawsuits filed against those companies in the wake of their collapse. (*Id.* ¶¶ 9, 11, 106-114.)

Iron identified several of these red flags in its initial complaint, and the Court found that the allegations were insufficient to state a claim that the director defendants consciously disregarded their oversight duties. *Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *7-*8. Specifically, the Court observed that Iron's allegations suggested "that Defendants may have known that problems were being discovered with mortgage-backed securities" in the broader economy, but that did "not mean that Defendants knew that U.S. Bank NA was failing to fulfill its duties as trustee or that proper oversight was not in place." *Id.* at *8. The red flags must show that the director defendants "'knew that there were material weaknesses in [the company]'s internal controls,' not simply that directors knew that mortgage-backed securities were receiving intense scrutiny." *Id.* at *7 (quoting *Rich*, 66 A.3d at 983).

Iron's amended complaint attempts to link some of those red flags more directly to US Bank and US Bank NA to reach the threshold of pleading conscious disregard. In the original complaint, for example, Iron describes an April 2011 report jointly published by the Federal Reserve System, the FDIC, the Office of Thrift Supervision ("OTS"), and the Office of the Comptroller of the Currency ("OCC"), reviewing mortgage loan files serviced by fourteen institutions, including US Bank. (Compl. ¶ 101.) Iron pointed out that the report found foreclosure disputes and potential documentation irregularities that could affect investors. (*Id.*) In the amended complaint, Iron goes on to allege that Defendants knew the particular loans serviced by US Bank presented "significant risk

problems," because, at the same time that the joint report was released, the Board of Directors authorized a consent order with the Federal Reserve System, identifying unsafe or unsound practices in the Mortgage Divisions at the company.  (Am. Compl. ¶ 119.)

As Iron concedes, though, the consent order did not relate to the covered trusts. Indeed, it did not relate to US Bank NA's trust operations at all; it was an agreement between the Federal Reserve System and US Bank's residential mortgage loan servicing operations.  (*Id.*)  Accordingly, the consent order may well have put the director defendants on further notice that there were risks associated with MBS, or even that there were problems with the mortgages held in various trusts.  But that is very different from alleging that US Bank's internal controls were insufficient to protect against failures by US Bank NA as trustee of the covered trusts.  The hurdle for Iron at the motion to dismiss stage is to show that US Bank's "directors knew that there were material weaknesses in [the company]'s **internal controls**," not that the directors knew there were weaknesses in the company's mortgage documents or foreclosure operations.  *Rich*, 66 A.3d at 983 (emphasis added).  Just as media reports or other red flags related to general MBS risks do not state a claim for a failure of oversight, so too do Iron's consent order allegations fail to present facts suggesting that US Bank NA was failing in its duties **as trustee** of the covered trusts and that Defendants were consciously disregarding their duty to oversee US Bank NA in that capacity.  *See In re Citigroup*, 964 A.2d at 128.

Iron also attempts to bolster its allegations with respect to two pending class actions against US Bank NA, which were briefly covered in the original complaint and dismissed by the Court as insufficiently related to the relevant issues in this case.  Iron

now goes into extensive detail about the allegations raised in each of the class actions. (*Id.* ¶¶ 124-30.)  The amended complaint quotes portions of orders in each case denying the defendants' motions to dismiss.  (*Id.* ¶¶ 128-30.)  As to *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*, the Court already considered in its prior Order the Southern District of New York decision Iron now quotes for additional support.  The Court found that "[t]he red flags that were directly on point in *Policemen's Annuity & Benefit Fund* are only tangentially related to the relevant issue in the present case."  *Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *8.  Iron's inclusion in its amended complaint of quotations from the *Policemen's Annuity & Benefit Fund* decision that the Court already considered does not alter the Court's view of the decision's relevance.

As to *Oklahoma Police Pension and Retirement System v. U.S. Bank NA*, the Court reaches a similar conclusion.  The plaintiffs in *Oklahoma Police Pension & Retirement System* alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.* (2006).  *Okla. Police Pension & Ret. Sys*, 291 F.R.D. at 57-58.  None of these allegations forms the basis for Iron's amended complaint in this action.  Further, as in *Policemen's Annuity & Benefit Fund*, the court's analysis in *Oklahoma Police Pension & Retirement System* focused on whether the trustee was aware of underlying violations and procedural deficiencies with respect to mortgage notes.  *Id.* at 56-58, 61-71.  The Court noted specific factual allegations that would support a claim that US Bank NA, as trustee, had breached certain duties or agreements.  *Id.* at 61-71.  In

this case, however, the focus is not US Bank NA as the trustee – it is on the directors of the trustee's parent company.  Further, Iron's allegations do not support a finding that particular directors at US Bank knew about, and neglected to establish controls to address, failings on the part of US Bank NA as trustee of the covered trusts.  Instead, Iron alleges that directors at US Bank knew about a number of red flags alerting them to general risks associated with MBS, which should have prompted them to take various actions.  The amended complaint does not explain how those general red flags would put the directors on notice of specific deficiencies or irregularities within US Bank NA. Thus, this case is distinguishable from *Oklahoma Police Pension & Retirement System*, just as the Court previously found this case distinguishable from *Policemen's Annuity & Benefit Fund*.

Additionally, a Second Circuit decision on December 23, 2014 abrogated both class action orders, further reducing the already-limited relevance the courts' holdings in those cases have to this action.  *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014).  Accordingly, the Court concludes that Iron's allegations as to the class actions do not support a denial of Defendants' motion to dismiss.

### 3.      New Red Flag Allegations in the Amended Complaint

Along with attempting to add greater detail to its previously-identified red flags, Iron alleges new red flags.  For example, Iron relies on US Bank's February 2008 Annual Report on Form 10-K filed with the SEC as support for the claim that the director

defendants knew that "certain securities backed by mortgages experienced both credit and liquidity issues" after turbulence in the sub-prime mortgage market in 2007. (Am. Compl. ¶ 112.) Iron alleges that the Form 10-K shows that the directors "acknowledged widespread credit risk due to the unprecedented mortgage market meltdown." (*Id.*) Here again, Iron's allegations point to Defendants' knowledge of general MBS risks or weaknesses but do not support a claim that the director defendants were aware of and consciously disregarded material weaknesses in the company's internal controls. Further, Iron acknowledges that the Form 10-K also assured that US Bank would "monitor changes in market conditions, including the underlying credit quality and performance of assets collateralizing these structured investments." (*Id.*) Pleading affirmatively that the director defendants had a monitoring system in place and discussed managing risks "do not support an inference of an 'utter failure to attempt to assure a reasonable information and reporting system exists,' but rather the opposite: an evident effort to establish a reasonable system." *South v. Baker*, 62 A.3d 1, 18 (Del. Ch. 2012) (quoting *In re Caremark Int'l*, 698 A.2d at 971).

Similarly, Iron details the committee roles of various director defendants, alleging that their roles on the company's Audit Committee or Risk Management Committee would have exposed them to information about the red flags and compliance and operational breaches. (Am. Compl. ¶¶ 53-55, 141-48, 201-02.) Much like the Form 10-K monitoring statement, Iron's allegations that US Bank had such committees and that they were regularly meeting to discuss risks and compliance matters suggests "an evident effort to establish a reasonable system," rather than a failure of internal controls or breach

of the duty of loyalty. *Baker*, 62 A.3d at 18. Iron's allegations suggest that the director defendants knew about the red flags by virtue of their positions on these committees and that ignoring those red flags in committee meetings or compliance discussions constituted a failure of oversight. It is "contrary to well-settled Delaware law . . . to infer that the directors had a culpable state of mind based on allegations that certain board members served on an audit committee board and, as a consequence, should have been aware of the facts on which the plaintiff premised [her theory of liability]." *Wood v. Baum*, 953 A.2d 136, 142-43 (Del. 2008). Iron cannot establish conscious disregard simply by alleging that the director defendants served in positions through which they likely would have noticed the alleged red flags.

Even accepting Iron's allegations about the director defendants' knowledge of the red flags through committee discussions as true, these new allegations all follow the same pattern as those previously rejected by the Court as insufficient: they suggest risks or deficiencies with MBS generally, but the only way Iron connects this general knowledge to a failure of oversight is by broadly asserting that Defendants "knew or consciously disregarded" such risks or deficiencies. (*See, e.g.*, Am. Compl. ¶¶ 9, 10, 120.) But while the Court must accept as true all factual allegations by Iron for the purposes of a Rule 12(b)(6) analysis, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although Iron's amendments plead with greater specificity precisely **how** the director defendants would have known about the general red flags or infirmities with respect to some of the mortgages US Bank serviced, "[c]onclusory

- 17 -

allegations that defendants failed to act on 'warning signs' in the broader economy do not suffice to state a claim." *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2013 WL 1777766, at *13 (S.D.N.Y. Apr. 25, 2013) (quoting *In re Citigroup*, 964 A.2d at 126-27).

When a plaintiff's theory of liability is a conscious failure to recognize and correct inadequate controls in light of "red flags," the plaintiff must make plausible allegations that specifically "support an inference that [the company's] directors knew that there were material weaknesses in [the company]'s internal controls and failed to correct such weaknesses." *Rich*, 66 A.3d at 983. A plaintiff can satisfy this requirement by alleging that the red flags alerted the directors to problems specifically relating to the company's failures or lack of adequate internal controls, rather than to the broader economy. In *Rich*, for example, the court found that the plaintiff had sufficiently alleged a breach of duty where the complaint identified red flags and also indicated that the company's directors knew about those red flags. *Id.* at 983-84. Unlike the general red flags identified by Iron, however, the red flags described by the plaintiff in *Rich* were specific to the company's internal controls. There, the board of directors indicated its knowledge of internal problems when it announced during the relevant time period that its financial statements would need restatement and produced a press release acknowledging that there were likely material weaknesses in the company's internal controls. *Id.* The company also received a letter from NASDAQ during the relevant time stating that the company would be delisted from NASDAQ if it did not bring its reporting requirements into compliance with the SEC. *Id.* at 984. Each of these red flags is distinctly related to

operations and controls at the directors' company, and a jury could reasonably infer that the directors knew of these internal weaknesses from plaintiff's allegations that the board of directors issued the press release and received the NASDAQ letter.

Both Iron's initial and amended complaints fail to allege facts supporting this additional link. They offer no facts that would explain how awareness of red flags in the broader MBS context would alert the director defendants that US Bank NA had material weaknesses in its own internal controls. In this case, the red flags Iron cites do not identify inadequate internal controls at US Bank or indicate that US Bank NA was failing as a trustee, such that the directors would be put on notice that they needed to act to prevent US Bank NA from failing in its duties. Iron convincingly alleges that the director defendants were aware of media reports about the collapse of WaMu or Bear Stearns and investigations into the issues surrounding MBS. But even accepting as true the factual allegations in Iron's amended complaint, their pleading still only reflects an increasing awareness of broader issues related to MBS. Iron's amended complaint falls short of alleging "facts suggesting that the Board was presented with red flags alerting it to potential misconduct **at the Company**." *In re Citigroup*, 964 A.2d at 128 (emphasis added) (internal quotation marks omitted). Even if the director defendants knew there were flaws with MBS, it is important to distinguish such knowledge from an awareness that US Bank NA was failing in its trustee obligations. *See id.* Iron's amended complaint still does not apply this general knowledge about the problems with MBS to the controls at US Bank NA.

The burden is on Iron to plausibly allege that the red flags alerted the director defendants to any failings at US Bank NA that they then consciously disregarded, breaching a fiduciary duty of loyalty. Because the Court concludes that Iron has not made this showing, the Court will grant Defendants' motions to dismiss with respect to the director defendants.

### B.    Officer Defendants

In this Court's Order dismissing Iron's initial complaint, the Court found that Iron's allegations against Defendants were, at heart, ultimately focused on a claim for failure of oversight. *Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *7. The Court explained that the duty implicated by a failure of oversight claim is the duty of loyalty. *Stone*, 911 A.2d at 370. "[O]fficers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty, and [ ] the fiduciary duties of officers are the same as those of directors." *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009). "The alleged facts that make it reasonable to infer that [a defendant] violated his duty of loyalty as a director, also establish his violation of that same duty as an officer." *Id.* at 709.

As with the director defendants, Iron's central liability theory as to the officer defendants[5] is that the officer defendants either knew or were grossly negligent in not knowing that (1) the mortgage loans had not been properly transferred to the covered

---

[5] Iron identifies the "officer defendants" as the following: Richard K. Davis, Andrew Cecere, Terrance R. Dolan, Richard J. Hidy, Bryan R. Calder, Diane L. Thormodsgard, and Does 1-10. (Am. Compl. ¶¶ 31-35, 47, 49, 50, 194.)

trusts as required under the agreements governing the loans, (2) the mortgage loan files were incomplete, and (3) many of the mortgage loans in the covered trusts were not in compliance with representations and warranties made by Bear Stearns, WaMu, and their affiliates.  (Am. Compl. ¶ 194.)  This theory of liability appears once again to be a failure of oversight claim.  Indeed, Iron consistently describes its allegations against the officer defendants in general terms as a claim that the officers "were at least grossly negligent in failing to fulfill their duty to act with due care in **overseeing** the Company's compliance with its statutory duties and contractual obligations in its capacity as trustee for the Covered Trusts."  (*Id.* ¶ 132 (emphasis added); *see also id.* ¶ 15 ("Specifically, the Officer Defendants were grossly negligent in failing to fulfill their duty to act with due care in overseeing the Trustee's compliance with its statutory duties and contractual obligations for the Covered Trusts.").)

To the extent Iron is alleging a failure of oversight claim on the part of the officer defendants, the Court will apply a duty of loyalty standard, just as with the director defendants.  *See Iron Workers Mid-S. Pension Fund*, 2013 WL 6858567, at *7 (citing *Stone*, 911 A.2d at 370); *see also Gantler*, 965 A.2d at 709 ("The alleged facts that make it reasonable to infer that [a defendant] violated his duty of loyalty as a director, also establish his violation of that same duty as an officer.").  Under the "conscious disregard" standard applied to a failure of oversight – or breach of the duty of loyalty – claim, the Court finds that Iron has failed to adequately allege a plausible claim for the reasons previously articulated in connection to the director defendants.  The red flags Iron cites for both the director and officer defendants reflect a likely awareness by Defendants that

there were issues with MBS generally, but "[c]onclusory allegations that defendants failed to act on warning signs in the broader economy do not suffice to state a claim." *In re Bank of Am. Corp.*, 2013 WL 1777766, at *13 (internal quotation marks omitted). Instead, the onus is on Iron to allege "facts suggesting that the Board was presented with red flags alerting it to potential misconduct **at the Company**." *In re Citigroup*, 964 A.2d at 128 (emphasis added) (internal quotation marks omitted). Because Iron has failed to sufficiently plead facts suggesting conscious disregard on the part of the officer defendants, the Court will dismiss with prejudice any claims against officer defendants based on a failure of oversight or the duty of loyalty.

Iron now asserts that with respect to the **officer** defendants, in addition to a claim for a breach of the duty of loyalty, it is also bringing a claim for a breach of the duty of care, which is reviewed under a lower standard than the duty of loyalty. In the event that Iron raises a separate claim for a breach of the duty of care, the substantive nature of such a claim and how it differs from Iron's failure of oversight claim is not apparent. The facts that prompt Iron to allege that "the Officer Defendants and Doe Defendants 1-10 breached their **duty of care**," (Am. Compl. ¶ 194 (emphasis added)), are identical to the wording of the allegations that Iron asserts constitute a breach of the duty of **loyalty** by the director defendants, (*id.* ¶ 200).

Insofar as Iron is bringing an independent claim for a violation of the duty of care on factual allegations very similar to those constituting its breach of the duty of loyalty claim, Iron argues that the duty of care claim is subject to a lower standard of review than a duty of loyalty claim. Specifically, Iron maintains that "duty of care violations are

actionable only if the directors acted with gross negligence." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2006); s*ee also Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011). Courts are divided on the question of whether an officer may be liable for a breach of the duty of care under the standard of gross negligence or the higher standard of bad faith or conscious disregard. *See, e.g.*, *Chen v. Howard-Anderson*, 87 A.3d 648, 666 n.2 (Del. Ch. 2014) (describing that a "lively debate exists regarding the degree to which decisions by officers should be examined using the same standards of review developed for directors"); *King ex rel. Cephalon, Inc. v. Baldino*, 409 Fed. App'x 535, 537-38 (3d Cir. 2010) (explaining that a claim "based on **officers'** and directors' alleged failure properly to oversee the corporation" requires a showing that the actors knew or should have known of violations and "'took no steps in a **good faith** effort to prevent or remedy that situation'" (emphasis added) (quoting *In re Caremark Int'l*, 698 A.2d at 971)); *Resnik*, 774 F. Supp. 2d at 632 ("However, 'duty of care violations are actionable only if the directors [or officers] acted with gross negligence.'" (alteration in original) (quoting *In re Walt Disney Co.*, 907 A.2d at 750)).

The Court will assume without deciding that the proper standard for evaluating an officer's duty of care is gross negligence. Even under a gross negligence standard, however, Iron's allegations fail to state a plausible claim. "Gross negligence is 'a reckless indifference to or a deliberate disregard of the whole body of stockholders' or actions which are without the bounds of reason." *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 934 (N.D. Cal. 2010) (quoting *In re Walt Disney Co.*, 907 A.2d at 750). "[P]leading [gross negligence] successfully in a case like this requires the

articulation of facts that suggest a **wide** disparity between the process the directors used to ensure the integrity of the company's financial statements and that which would have been rational." *Guttman v. Huang*, 823 A.2d 492, 507 n.39 (Del. Ch. 2003) (emphasis original).

Iron's amended complaint does not allege facts consistent with a reckless indifference to the whole body of stockholders, nor does it articulate what would have been rational or reasonable on the part of the officer defendants. Rather, Iron makes generic allegations such as, "[b]y failing to implement an oversight system adequate to determine whether the Covered Trusts held title to the Mortgage Loans, the Individual Defendants have caused U.S. Bank NA to impair and delay its ability to recover losses for those Mortgage Loans where borrowers have ceased making payments . . . ." (Am. Compl. ¶ 170.) Such an allegation does not explain what actions the officer defendants should have reasonably taken in light of the alleged red flags. Because the red flags Iron identifies were not sufficient to alert Defendants to material weaknesses in the company's controls, the Court finds that allegations that the officer defendants failed to act in the face of such red flags does not adequately state a claim for "reckless indifference" or "actions that are without the bounds of reason." *See In re Accuray*, 757 F. Supp. 2d at 934. Thus, to the extent Iron brings a claim for a violation of the duty of care against the officer defendants that is distinct from its oversight or duty of loyalty claims, the Court will grant the officer defendants' motion to dismiss that claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Defendants' and U.S. Bancorp's Motions to Dismiss [Docket Nos. 67 and 74] are **GRANTED**.  This action is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 19, 2015                                   _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                          United States District Judge